UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| LOUIS LANCASTER | : | DOCKET NO. 06 CV 1203 |
| --- | --- | --- |
| VERSUS | : | JUDGE MINALDI |
| ALBERTO GONZALES | : | MAGISTRATE JUDGE WILSON |

### REPORT AND RECOMMENDATION

This matter originated as a petition for review of a removal order filed in the United States Fifth Circuit Court of Appeals pursuant to 8 U.S.C. § 1252. Petitioner is challenging his removal based on his contention that he obtained derivative citizenship by virtue of the naturalization of his mother before he was 18 years old. In the Court of Appeals the parties stipulated that there were genuine issues of material fact regarding Petitioner's nationality and the Court of Appeals transferred the matter to this court for a new hearing and a decision on Petitioner's nationality claim pursuant to 8 U.S. C. § 1252(b)(5)(B). This matter has been referred to the undersigned magistrate judge for a hearing, report, and recommendation in accordance with 28 U.S.C. §636(b)(1)(B). The hearing was held September 28, 2006.

At all times material to this case 8 U.S.C. § 1432[1] provided, in pertinent part:

(a) A child born outside of the United States of alien parents, . . . becomes a citizen of the United States upon fulfillment of the following conditions:
    (1) The naturalization of both parents; or
    . . . .
    (3) The naturalization of the parent having legal custody of the child when

---

[1] 8 U.S.C. § 1432 was repealed by the Child Citizenship Act of 2000, Pub.L. No. 106-395, Title I, § 103(a), 114 Stat. 1632, effective February 27, 2001.

> there has been a legal separation of the parents . . . ; and if
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

. . . .

Petitioner was born on August 21, 1973, in Georgetown, Guyana. Petitioner's mother was granted a Certificate of Naturalization on November 8, 1990: prior to Petitioner's eighteenth birthday. Government Exhibit A-4. However, Petitioner's father was not naturalized until April 2, 1996. Government Exhibit A-8. At that time Petitioner was 22 years old. Accordingly, Petitioner's claim of derivative citizenship turns on whether, prior to Petitioner's eighteenth birthday: (1) "there had been a legal separation" of Petitioner's parents, and (2) petitioner was in the "legal custody" of his mother.[2]

"Naturalization is available only as provided by Acts of Congress and, even then, only in strict compliance with the terms of such acts." *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 395 (5th Cir. 2006) (internal quotes and citations omitted). Petitioner has the burden of proving that he qualifies for naturalization. *Id.* All doubts must be resolved against those seeking cizenship. *Id.* A "legal separation" within the meaning of § 1432 requires "a formal, *judicial* alteration of the marital relationship." *Nehme v. INS*, 252 F.3d 415, 425-26 (5th Cir. 2001). Section 1432 also requires that the Petitioner have been in the "sole legal custody" of his mother. *Bustamante-Barrera v. Gonzales*, supra at 397.

---

[2] Respondent concedes that Petitioner was a lawful permanent resident at all material times.

In order to establish that his mother was legally separated prior to his eighteenth birthday Petitioner relies, in part, on a Temporary Order of Protection (Exhibit PB-3). The order of protection restricted petitioner's father from, in general, endangering petitioner's mother, being intoxicated at home, and excluding his wife and children from the home. Petitioner argues that this is formal, judicial alteration of the marital relationship, and, therefore, a "legal separation" within the meaning of § 1432 as interpreted by *Nehme v. INS*, *supra*. This court disagrees. Under Petitioner's reasoning his parents were "legally separated" even though the order contemplated that they were still married and living together. Such a reasoning flies in the face of common sense. The court in *Nehme* was asked to determine whether an informal, actual separation of a married couple satisfied § 1432(a)(3)'s "legal separation" requirement. *Bustamante-Barrera v. Gonzales*, *supra*. The answer was no. A formal, judicial alteration of the marital relationship was necessary. The focus of the court was on the meaning of "legal." *Id.* While the order of protection may have been "legal" it is by no stretch of reasoning a "separation." *Nehme* does not dictate a different result.

Petitioner also relies on a purported divorce decree from Guyana. (Government Exhibit A-12 and PE-2). He contends that in January, 1990, his mother traveled to Guyana for her mother's funeral. While there she gave a power of attorney to someone for the purpose of obtaining a divorce. Petitioner's mother admits that she deliberately withheld information about the divorce proceedings from her husband. At the time both were domiciled in the United States.[3] Sometime later Petitioner's mother received what purported to be a divorce decree dated

---

[3] Even if the divorce decree is assumed to be authentic the ex parte nature of the proceedings, the fact that both parties were domiciled in the U.S., and the deliberate lack of notice to the husband raise serious issues relative to the validity of the decree. *Burnham v.*

3

March, 1991. Government Exhibit A-12. Petitioner did not turn eighteen until August, 1991. The State Department was asked to investigate the authenticity of the divorce decree, and it was determined that the decree was fraudulent. Government Exhibits A 16-17. The case number on the decree was found to relate to a divorce of a different couple. In addition, the signatures on the decree were not recognized. The lack of authenticity was confirmed by a letter from the Registrar of the Supreme Court of Judicature (Government Exhibit A-17) and by emails from a State Department representative who personally examined the records (Government Exhibit A-16 & 7/21/05 email from Marcia Dehnert to Tracy Davenport).

Petitioner's father submitted an application for naturalization in 1995. In connection with that application he represented that he and his wife had been "unofficially separated" since June of 1987. He made no claim that they were divorced. Government Exhibit A-7. Both the Immigration Judge and the Board of Immigration Appeals concluded, based on this evidence, that Petitioner have failed to bear his burden of establishing that his parents were legally separated prior to his eighteenth birthday.

Recently Petitioner's mother traveled to Guyana in an attempt to gather additional evidence to support Petitioner's claim of citizenship. Her first visit to the office of the registrar produced nothing. However, while standing outside she saw two men dressed in marshal's uniforms leaving the registrar's building. She talked to them about her situation. The next day she returned to the outside of the registrar's office trying to talk to people outside. The following

---

*Superior Court of California*, 110 S.Ct. 2105, 2109-10 (1990); *Williams v. State of North Carolina*, 63 S.Ct. 207 (1942). However, this court's conclusion that the Petitioner has failed to establish the decree is genuine by a preponderance of the evidence makes reaching these issues unnecessary.

day she returned to the registrar's office and one of the men she had met on the first day was inside. He handed her some folded documents. According to Petitioner's mother her impression was that the man was risking his safety in giving her the documents so she went outside before opening them. Included in the documents were copies of the purported divorce decree (PE-2), and other documents that appeared to relate to an employment dispute within the registrar's office. There is no evidence as to whether this man was, in fact, employed by the registrar's office. There is no evidence that PE-2 actually came from the official records of the registrar. Certainly the circumstances are mysterious, but this court is unable to conclude that a preponderance of the evidence supports the genuineness of the purported divorce decree. Considering the evidence as a whole Petitioner has failed to establish an essential element of his claim of derivative citizenship; that his parents were legally separated prior to his eighteenth birthday. This conclusion makes it unnecessary to reach the issue of whether Petitioner was in his mother's sole legal custody.

It is recommended that Petitioner's nationality claim be denied.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL**

**CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 2ND day of October, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE